UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREW SETH TARKOWSKI,         ) | |
|                PLAINTIFF,         ) | |
| vs.                                                          ) | CASE NO. 12-CV-57-FHM |
| CAROLYN W. COLVIN, Acting         )<br>Commissioner of the Social Security         )<br>Administration[1],         ) | |
|                DEFENDANT.         ) | |

## OPINION AND ORDER

Plaintiff, Andrew Seth Tarkowski, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Andrew Seth Tarkowski's applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Charles Headrick  was held October 8, 2010. By decision dated November 5, 2010, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on December 15, 2011. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

The Court holds that the existing record and findings will not support the denial of benefits on the ALJ's stated rationale and, therefore the case must be REVERSED and REMANDED for further proceedings.

## Background

Plaintiff was 37 years old on the alleged date of onset of disability and 38 on the date of the denial decision. Plaintiff dropped out of high school in the 10th grade, however, he obtained his vocational certificate in welding. He claims to have been unable to work since February 1, 2008, as a result of mood disorder (thought to be bipolar disorder) and cannabis dependence. [R. 12-13]. Plaintiff testified that he has a long history of alcohol and methamphetamine abuse, but had not used in years. [R. 38]. Plaintiff also has a long history of cannabis dependence, however, he claims to be in sustained remission. [Dkt. 15,

2

p. 1].

Plaintiff asserts that he loses focus and cannot finish projects. Additionally, because of his mood swings and anger Plaintiff has lost several jobs. Plaintiff complains that he is lethargic, unmotivated, moody, irritable, listless, and had disrupted sleep. [R. 13]. Plaintiff states that he does not work well with others and has problems with authority figures. Plaintiff testified that he gets nervous and anxious when out in public. [R. 32]. His physical complaints include shortness of breath which he attributes to chronic bronchitis, he can stand for about 10 minutes at one time, can sit for 20 to 30 minutes at one time, and walk one-half to one block at a time. Plaintiff uses an inhaler for shortness of breath and breathing treatments twice a day. [R. 36].

## The ALJ's Decision

The ALJ determined that the Plaintiff has severe impairments relating to mood disorder with cannabis dependence. [R. 12]. The ALJ determined that the Plaintiff has the residual functional capacity to perform a full range of medium work but with nonexertional limitations: moderate limitations in the ability to understand, remember, and carry out detailed instructions; sustain an ordinary routine without special supervision; and set realistic goals or make plans independently of others. [R. 15].

The ALJ also found the Plaintiff has limitations in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods; interact

appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers or peers without distracting them or exhibiting behavior extremes. [R. 15].

The ALJ found that the Plaintiff is able to remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. [R. 15].

Although Plaintiff was unable to perform his past relevant work and his ability to perform work at all exertional levels has been compromised by nonexertional limitations, the ALJ determined, based on the testimony of the vocational expert, that there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. [R. 17]. Accordingly, the ALJ determined that the Plaintiff was not disabled during the relevant period from February 1, 2008, through November 5, 2010. The case was thus decided at step five of the five-step evaluative sequence for determining a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

### Plaintiff's Allegations

Plaintiff asserts: 1) the impairments in the decisional RFC are not the same impairments as in the hypothetical to the vocational expert; 2) the ALJ failed to propound a proper hypothetical to the vocational expert; 3) the ALJ failed to properly consider the medical source opinions; and 4) the ALJ failed to perform a proper credibility determination. For the reasons discussed below, the Court REVERSES and REMANDS the decision of

the Commissioner for further proceedings.

## Analysis

### Hypothetical

The ALJ's RFC finding in the denial decision does not have the same limitations as the hypothetical posed to the vocational expert. [R. 15]. Plaintiff contends that the ALJ's reliance upon the vocational expert's testimony in this situation was error. The court agrees.

Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted); see also *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record"). An ALJ's failure to mirror a claimant's residual functional capacity limitations in a hypothetical calls into question the evidentiary support for the ALJ's findings regarding the jobs a claimant is capable of doing, see *Decker v. Chater*,86 F.3d 953, 954 (10th Cir. 1996).

The RFC finding reflects the claimant is capable of performing a full range of medium work with a number of nonexertional limitations. Those nonexertional limitations were not contained in the hypothetical question posed by the ALJ to the vocational expert. The ALJ accepted the testimony of the vocational expert who cited jobs that could be performed given the claimant's age, education, work experience, and residual functional

capacity. However, the hypothetical question posed by the ALJ to the vocational expert does not contain the same limitations in the residual functional capacity assessment. As a result, the ALJ's finding that the claimant can make successful adjustment to other jobs that exist in the national economy is not supported by substantial evidence.

The court rejects the Commissioner's assertion that this "error was harmless because the ALJ communicated the essence of Plaintiff's limitations . . . to the VE by instructing him to limit his testimony to unskilled jobs." [Dkt. 16, p. 4]. The RFC contains many more limitations than unskilled work. For instance, a moderate limitation in the ability to perform activity within a schedule, maintain regular attendance, be punctual within customary tolerances, and some of the other RFC limitations might impact the ability to perform all skill levels, including unskilled work.

### **Medical Source Opinions**

Plaintiff further contends that the ALJ failed to properly consider the medical source opinions. The ALJ found that the treatment records of Associated Centers for Therapy (ACT) by Dr. Hanan, who followed the progress of the Plaintiff's impairments for over two years, were given great weight. The ALJ in turn did not give much weight to Dr. Hanan's letter of disability dated October 4, 2010. The ALJ indicated that Dr. Hanan's opinions outlined in his letter of disability contradicted some of the information contained within the records of Associated Centers for Therapy (ACT). [R. 17].  Also, the ALJ failed to assign any weight to the consultative examiner, Dr. Minor W. Gordon, Ph.D., who performed the Plaintiff's consultative psychological evaluation on September 9, 2009.   The ALJ stated:

> As for the opinion evidence, the treatment records from Dr. Hanan follow the progress of the claimant's impairments for over two years, therefore; are given great weight, however; his

> opinions in his letter on October 4, 2010, contradicts with some of the information within the ACT records and is not given much weight. The psychological evaluation by Dr. Gordon indicates that the claimant's alleged impairments are not as severe as he indicates.

[R. 17].

The court finds the ALJ failed to articulate specific, legitimate reasons for his decision and equally failed to sufficiently highlight how the treating physician's evaluations were inconsistent with the other medical evidence presented in the record. When an ALJ rejects a treating physician's opinion, he must articulate "specific, legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted). Additionally, "[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Id.* (quotation omitted). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 1003).

If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. 20 C.F.R. § 416.927(f)(2)(ii). He must also give good reasons in his written decision for the weight he gave to the treating physician's opinion. *Id.* at 762; see also Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (requiring decision to contain reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

As to the treating physician, Dr. Hanan, the ALJ failed to explain the reasons for assigning that weight or for rejecting the opinion altogether. Additionally, the ALJ failed to articulate the weight, if any, he gave Dr. Gordon's opinion. The ALJ must explain the weight assigned to the treating physician's, nontreating physician, or examiner's opinion. See, e.g., *Drapeau*, 255 F.3d at 1214.

## Credibility

Plaintiff argues that the ALJ failed to perform a proper credibility determination. The ALJ's credibility determination must be "closely and affirmatively linked" to substantial record evidence. *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004). In this case, the ALJ did just that. In his decision, despite his use of "boilerplate" language, the ALJ clearly and affirmatively linked his adverse determination of Claimant's credibility to substantial record evidence. [R/ 16-17]. The ALJ stated Plaintiff was not credible because the record reveals that Plaintiff stated he had chronic back pain from scoliosis, though examination for scoliosis was negative. [R. 214]. The record shows that when Plaintiff is not smoking marijuana and is on his medication, his anger issues, mood, energy and outlook are much improved. [R. 241-242]. Plaintiff testified that he can walk one-half to one block at a time, yet he testified that he rides his bicycle in the neighborhood [R. 33], and plays Frisbee golf for one to two hours and is walking the entire time. [R. 41].

Though the ALJ's credibility determination included "boilerplate" language, the ALJ's credibility analysis is not fatally flawed. In *White v. Barnhart,* 287 F.3d 903 (10th Cir. 2002) the court went on to affirm the judgment because it found that the ALJ's credibility assessment "did not rest on mere boilerplate language, but instead was linked to specific findings of fact." *Id.* at 910. *See also Freeman v. Astrue,* 441 Fed. Appx. 571, 574 (10th

Cir. 2011)(unpublished)(boilerplate statement would not have been adequate if that had been the extend to the ALJ's credibility analysis); *Arles v. Astrue,* 438 Fed. Appx. 735, 738-39 (10th Cir. 2011)(unpublished)("despite the ALJ's use of disfavored language, his ultimate credibility determination is grounded in a thorough analysis").

The court finds that despite the ALJ's use of "boilerplate" language in his credibility assessment, it was adequately linked to substantial evidence contained within the record.

## Conclusion

The decision of the Commissioner is REVERSED and REMANDED.

SO ORDERED this 1st day of March, 2013.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE